## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO.: 5:05CV253-V

R.J. Reynolds Tobacco Company,  )
               Plaintiff,  )
                                   )
             vs.  )     **Memorandum and Order**
                                   )  **Denying Defendants' Motions To Dismiss**
Market Basket Food Stores, Inc.,  )  **Federal and State RICO Claims**
et al.,  )
                Defendants.  )
                                   )

     **THIS MATTER** is before the Court on Motions To Dismiss pursuant to FED. R. CIV. P. 12(b)(6) and 9(b) filed by Defendants Daniel Blackburn, Appalachian Oil Company, Inc., Jeffrey Benedict (collectively, "Appco Defendants"), Dave's Distributing ("DD"), and Dave Ritchie ("Ritchie"). (Documents #110, #116, #117, #125, #126 (motions and memoranda in support) and #160, #161, #164, #165, #176 (reply briefs))

     After filing an Answer on November 8, 2005, Defendants R.J. Marketing ("RJM") and Jason Carpenter ("Carpenter") filed a "notice" adopting the arguments advanced by the moving Defendants identified, *supra*. (Document #145) Market Basket Food Stores, Inc. ("Market Basket"), and Stephen Hunt ("Hunt"), who answered on November 7, 2005, filed a similar "notice" of intent to adopt the arguments set forth within the motions filed by the other Defendants. (Document #151)

     Plaintiff asks the Court not to consider motions on behalf of these adopting Defendants. Plaintiff first argues that Defendants R.J. Marketing's and Jason Carpenter's joint filing is untimely.

(RJR's Mem. In Opp., at 12 n. 1) Alternatively, Plaintiff contends that Defendants' wholesale adoption of the other Defendants' legal arguments[1] precludes a meaningful response. Id.

Defendants RJM and Carpenter claim they reserved the right to move for dismissal for failure to state a claim upon which relief could be granted in the Answer filed on their behalf. (*See* RJM's and Carpenter's Answer, First, Second, & Sixth Affirmative Defenses) Indeed, RJM and Carpenter expressly indicated in the Sixth Affirmative Defense an intent to challenge the state and federal RICO claims based upon Plaintiff's purported failure to establish Defendants were part of an "enterprise" and / or that Defendants had "engaged in a pattern of racketeering activity."

Similarly, Defendants Market Basket and Hunt expressly identified affirmative defenses within the Answer, also filed on behalf of both Defendants. (*See* Market Basket's and Hunt's First, Twelfth, and Thirteenth Affirmative Defenses) In the Twelfth Affirmative Defense, Market Basket and Hunt challenge Plaintiff's allegations with respect to a "pattern of racketeering activity" as well as Plaintiff's ability to prove the existence of a separate and distinct "enterprise." In the Thirteenth Affirmative Defense, Defendants raise the Rule 9(b) pleading with particularity issue relevant to the fraud claims.

R.J. Reynolds Tobacco Company ("RJR") opposes each of the motions to dismiss. (Document #150) In its opposition brief, Plaintiff requests an opportunity to respond further in the event the Court considered the motions advanced by Defendants RJM and Carpenter. Id. Market Basket and Hunt's "notice" was filed <u>after</u> Plaintiff filed its opposition brief. Presumably, Plaintiff's position is the same with respect to Defendants Market Basket and Hunt. Because Plaintiff's allegations are essentially identical and present the same legal issues, in the interest of judicial

---

[1] Plaintiff calls this a "me, too" motion.

economy and efficiency, the Court will consider these additional motions with respect to Defendants RJM, Carpenter, Market Basket, and Hunt.[2]  However, the motions with respect to these Defendants are treated as a motion for judgment on the pleadings pursuant to Fᴇᴅ. R. Cɪᴠ. P. 12(c).  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).[3]

These matters are now ripe for resolution by the Court.[4]

## II. Legal Standard

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the complaint as true, and construe the facts alleged in the complaint in the light most favorable to the plaintiff.[5]  See GE Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).  Dismissal may occur only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief. Flood v. New Hanover County, 125 F.3d 249, 251

---

[2] Defendants Market Basket and Hunt expressly state that the claims against Defendants Appco, Blackburn, Benedict, Dave's Distributing, and Ritchie are "virtually identical" to the claims against them, thereby eliminating the need for a duplicate memorandum of law and supplemental opposition brief. (Market Basket's and Hunt's Mot., at 1.)

[3] In Edwards v. City of Goldsboro, the Fourth Circuit explained that if a defendant moves for dismissal under Rule 12(b)(6) after filing an answer, the motion should technically be viewed as a motion for judgment on the pleadings even though analyzed under the standard applicable for a Rule 12(b)(6) motion to dismiss.  Edwards, 178 F.3d at 243 (citations omitted).  The circuit court cited to Rule 12(h)(2), which allows the defense of failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) to be raised "by motion for judgment on the pleadings, or at the trial on the merits" and commented that converting the motion to a Rule 12(c) motion has no practical effect given that both motions are subject to the same legal standard. Id.

[4] A summary description of the case can be found in the Court's Memorandum and Order denying the Appco Defendants' motion for abstention.  There is no need for a detailed recitation of the facts given the lengthy analysis.

[5] The Court considers only the Verified Complaint and Defendants' responsive pleadings.  Land v. U.S. Maritime Comm'n, 330 U.S. 731, 735 (1947).  In other words, the Court is not relying upon any evidence presented in support or in opposition to Plaintiff's request for issuance of a preliminary injunction.

(4th Cir. 1997). To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Jackson v. Blue Dolphin Comme'ns of N.C., LLC, 226 F. Supp. 2d 785, 789 (W.D.N.C. 2002).

## III. Pleading Standard

Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV. P. 9(b).   The purpose of Rule 9(b) is "to ensure that defendants have notice of the charges against them adequate to prepare a defense." United States ex rel Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F.Supp. 2d 258, 267 (D.D.C. 2002) (citation omitted).

RICO claims based upon fraud must satisfy the Rule 9(b) particularity requirement. R. J. Reynolds Tobacco Co. v. S.K. Everhart, Inc., 2003 WL 21788858, *2 (July 31, 2003 M.D.N.C.)(citing Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989)).  However, the other RICO elements do not have to be pled with specificity. Abels v. Farmers Commodities Corp., 259 F.3d 910, 919-20 (8th Cir.2001)(not requiring heightened pleading for allegations of pattern); Busby v. Crown Supply, Inc., 896 F.2d 833, 840 (4th Cir.1990)(not requiring 9(b) specificity for pleading of investment under 1962(a)); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, n.4 (2nd Cir.1990) (Rule 9(b) pleading requirement not applicable to conspiracy).

Similarly, an intent to defraud does not have to be pled with particularity. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999) ("the second sentence of 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive").  Even if a heightened pleading standard governed, Plaintiff describes the nature of the

4

Defendants' alleged misrepresentations and the manner in which Defendants' representations purportedly induced payment of the buy down monies by Plaintiff RJR. (RJR's Compl., ¶¶7, 92-95, 105, 110, 118, 122, 125, 179, 181, 183, 187, 228, 276, 314)

In considering whether dismissal of a complaint pursuant to Rule 9(b) is warranted, the Court should hesitate to do so if "satisfied 1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and 2) that plaintiff has substantial prediscovery evidence of those facts." S.K. Everhart, Inc., 2003 WL 21788858, *2 (quoting Harrison, 176 F.3d at 784.)

As set out in greater detail below, Plaintiff has alleged sufficient facts to place Defendants on notice of the particular circumstances against which they will have to defend. Further, Plaintiff's detailed allegations are commensurate with the substantial prediscovery evidence in this case. Some of Plaintiff's evidence is documentary (i.e., alleged fraudulent "special order" invoices and records of payment via check / wire) which has allowed Plaintiff to allege fraudulent conduct by specific or individual Defendants on particular dates. In some instances, Plaintiff alleges the exact number of cigarette cartons that were purportedly purchased or sold as bought-down product. Plaintiff has also obtained prediscovery evidence from alleged co-conspirators and / or Defendants that have since settled with Plaintiff and been dismissed from the case.[6] Given the nature of the allegations, and the detail with which each cause of action has been pled, Defendants' motion pursuant to Rule 9(b) will be denied.

---

[6] Aside from noting the *existence* of Plaintiff's prediscovery evidence, the Court does not consider the substantive evidence referred to in this Order for purposes of resolving the Rule 12(b)(6) motion.

## IV. Core Civil RICO Requirements[7]

In order to survive Defendants' Rule 12(b)(6) motions with respect to the RICO claims pursuant to 18 U.S.C. §§1962(a), (c) and (d), RJR must allege facts in support of certain essential elements common to each. S.K. Everhart, Inc., 2003 WL 21788858, *4 (*citing* Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (noting essential elements of Section 1962(c)). These common essential elements are: a RICO enterprise, racketeering activity, and a pattern of racketeering activity. Id. The Court will analyze these RICO "basics" prior to engaging in an analysis of the unique criteria specific to each statutory provision.

### A. Plaintiff Alleges Facts In Support Of One Or More RICO Enterprises

For purposes of RICO, an "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). A RICO "enterprise" encompasses both legitimate and illegitimate enterprises. United States v. Turkette, 452 U.S. 576 (1981).

Members of the alleged "enterprise" must be "associated together for a common purpose of engaging in a course of conduct." S.K. Everhart, Inc., 2003 WL 21788858, *4 (*quoting* Turkette, 452 U.S. at 583)(distinguishing the "enterprise" and "pattern of racketeering activity" requirements while recognizing that proof of each element may coalesce). The existence of an "enterprise" may be demonstrated by "evidence of an ongoing organization, *formal or informal,* and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583 (*emphasis provided*);

---

[7] With one exception, the Court analyzes the federal and state law RICO claims together because the North Carolina RICO statute mirrors the federal RICO statute. S.K. Everhart, Inc., 2003 WL 21788858, *3 n.1. Defendants' challenge to the North Carolina RICO actions based upon failure to notify the State Attorney General of the commencement of the private civil action is analyzed separately. (*See* Section "V,D")

United States v. Fiel, 35 F.3d 997, 1003 (4th Cir.1994) ("The hallmark concepts that identify RICO enterprises are "continuity, unity, shared purpose and identifiable structure."")(*quoting* Griffin, 660 F.2d at 1000.)

In its Verified Complaint, Plaintiff alleges the existence of multiple RICO "enterprises." Plaintiff alleges two (2) "association-in-fact"enterprises as well as seven (7) "legal entity" enterprises.[8] (RJR's Compl., ¶¶300-313)

### 1. Marketing Relationship Enterprise / Regional Cigarette Distribution Enterprise

Plaintiff first alleges the existence of a Marketing Relationship Enterprise. According to Plaintiff, the marketing relationship enterprise is an association-in-fact comprised of Plaintiff RJR and its contracted wholesalers and retailers. (RJR's Compl., ¶¶301-304) Plaintiff alleges that the Marketing Relationship Enterprise operated with a unity of purpose, namely, "to promote R.J. Reynolds' cigarettes in the marketplace, and to increase sales, both cigarette and non-cigarette, for the Contracted Retailers and Contracted Wholesalers." (RJR's Mem. In Opp'n, at 39; RJR's Compl., ¶¶301-304)

Plaintiff also alleges the existence of a Regional Cigarette Distribution Enterprise association-in-fact, consisting of all cigarette manufacturers, retailers, wholesalers, and Fourth-tier Wholesalers operating in the relevant region.[9] (RJR's Compl., ¶¶305-310) According to Plaintiff,

---

[8] As the case is currently postured, Plaintiff alleges nine (9) different enterprises existed: "Marketing Relationship Enterprise," "Regional Cigarette Distribution Enterprise," "Wholesaler Enterprise," "Market Basket Enterprise," "J & L Distributor Enterprise," "RJ Marketing Enterprise," "Dave's Distributing Enterprise," "Appco Enterprise," and "DWI Enterprise."

[9] The relevant region is described by Plaintiff as Western North Carolina / Eastern Tennessee / Southwestern Virginia / Northern Kentucky.

the Regional Cigarette Distribution Enterprise likewise had a unity of purpose – "to promote the cigarette sale volumes" of its members. (RJR's Mem. In Opp'n, at 42; RJR's Compl., ¶310)

Dave's Distributing contends that the alleged Marketing Relationship and Regional Cigarette Distribution Enterprises have no structure apart from the racketeering activity and, therefore, do not constitute RICO enterprises as defined by the statute.[10] (DD's Mem. In Supp., at 11.) Related to the "separate and apart" argument, Defendants contend that the alleged association-in-fact enterprises lack the necessary organizational structure. (DD's Mem. In Supp., at 14-15; Appco's Mem. In Supp., at 25-26.)

United States v. Tillett is instructive. United States v. Tillett, 763 F.2d 628 (4th Cir. 1985). In Tillett, the Fourth Circuit found the fact that legitimate business operations were being conducted in the intervals between the alleged racketeering activity demonstrated that "the organization existed separate and apart from the pattern of racketeering activity in which it was engaged at any particular moment." Tillett, 763 F.2d at 632 (citing United States v. Griffin, 660 F.2d 996, 999 (4th Cir.1982)). The Fourth Circuit also considered the requisite structure for an illegitimate association-in-fact enterprise and noted that the enterprise's associates operating according to their specific functions evidenced a structure within the group. Tillett, 763 F.2d at 631. Based in part upon the existence of legitimate business operations and the identifiable structure, the circuit court found sufficient support for the jury's determination that a RICO enterprise had been established. Id.

Here, as described by Plaintiff, the Marketing Relationship and Regional Distribution Enterprises consist of both legitimate operations as well as a "black market" for bought down

---

[10] Appco makes the same argument with respect to the Wholesaler and Legal Entity Enterprises. (Appco's Mem. In Supp., at 26.)

cigarettes created by Defendants. (RJR's Mem. In Opp'n, at 39, 41 n.101; RJR's Compl., ¶¶301, 304, 305, 310) In addition, Plaintiff has articulated within its Verified Complaint the alleged role of each of the enterprise's members and the purported organizational structure. (RJR's Compl., ¶¶302, 303, 305-309) Plaintiff need not allege a *formal* organizational structure in order to allege the existence of an association-in-fact enterprise.[11] Griffin, 660 F.2d at 1000.

In addition, the inclusion of Plaintiff RJR within the alleged Marketing Relationship Enterprise is inconsequential. According to Dave's Distributing, the identification of Plaintiff as a member of these alleged enterprises means that the members of the enterprise had divergent goals and could not possibly have any common purpose.[12] (DD's Mem. In Supp., at 12-13.) However, Plaintiff alleges that this *legitimate* enterprise, operating with a unity of purpose, was infiltrated by the unlawful conduct of certain members. (RJR's Compl., ¶¶ 304, 318) The fact that the unlawful conduct alleged may be inconsistent with the objectives of the Marketing Relationship Enterprise does not defeat Plaintiff's allegation. *See, generally* United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc., 837 F.2d 356, 362 (9th Cir.1988)(language of §1962(c) "does not prohibit the plaintiffs from including themselves in a legitimate, albeit infiltrated, enterprise and has not been interpreted to limit RICO enterprises to those persons engaged in the illegal conduct.")(*citing* Sedima, 473 U.S. at 483-84; Polymer Dynamics, Inc. v. Bayer Corp., 2000 WL 1146622 (E.D.Pa. 2000)(plaintiff can be a member of an enterprise).

---

[11] The undersigned finds the facts as alleged here distinguishable from the facts of VanDenBroeck v. Commonpoint Mortgage Co., 210 F.3d 696 (6th Cir. 2001) (RICO "enterprise" not alleged where there was no discreet number of entities utilized in effecting alleged fraudulent scheme, no "hierarchal structure" and no functioning as a continuous unit).

[12] Defendant cites no authority for this proposition.

Accepting Plaintiff's allegations as true, Plaintiff has alleged facts in support of both association-in-fact enterprises. *See* <u>S.K. Everhart, Inc.</u>, 2003 WL 21788858, *4 (recognizing plaintiff's allegations describing a similar marketing relationship as satisfying "association in fact" enterprise pleading requirement).

### 2. Legal Entity Enterprises / Wholesaler Enterprise

In addition to alleging that certain Defendants worked together to form association-in-fact enterprises, Plaintiff alleges that each legal entity also constitutes a separate RICO enterprise.[13] (RJR's Compl., ¶¶311-313) To demonstrate the existence of a legal entity enterprise, Plaintiff need only show that the purported legal-entity enterprises are formal, legal entities. <u>Griffin</u>, 660 F.2d at 999 (highlighting the differences between proving the existence of an association-in-fact enterprise and a legal-entity enterprise for purposes of a §1962(c) claim). For each of the legal entity enterprises asserted by RJR, this requirement is easily met. (RJR's Compl., ¶¶18, 20, 23, 25, 27)

Finally, the suggestion that the legal entity enterprises are deficiently pled as a result of Plaintiff's failure to allege "existence apart from the alleged commission of predicate acts" is without merit. As is the case with the association-in-fact enterprises, Plaintiff alleges that the legal entity enterprises were contemporaneously engaged in legitimate business during the commission of the predicate acts. (RJR's Compl., ¶¶18, 20, 23, 25, 27) Indeed, Plaintiff expressly alleges the racketeering activity was an "integral part" of the entity's business as opposed to the sole purpose

---

[13] As a wholesale distributor under contract with RJR, the H.T. Hackney entity is described by Plaintiff as the Wholesaler Enterprise. (RJR's Compl., ¶311)

for its existence.[14]  (RJR's Compl., ¶¶311, 312)  Plaintiff's allegations are not deficient in this respect.

## B. Plaintiff Alleges Facts In Support Of Defendants' "Racketeering Activity"

For purposes of RICO, "racketeering activity" is defined broadly and includes any act which is indictable" under 18 U.S.C. §§1341 and 1343 (federal mail and wire fraud statutes) and 18 U.S.C. §2342 (statute barring trafficking in contraband cigarettes).  18 U.S.C. §1961(1)(B).

In this case, the predicate acts of "racketeering activity" alleged by Plaintiff include violations of the federal mail and wire fraud statutes.  Federal mail and wire fraud statutes require proof of: 1) a scheme disclosing an intent to defraud; 2) the use of the mail or the wires in furtherance of the scheme.[15] S.K. Everhart, 2003 WL 21788858, *5 (quoting Chisolm v. Transouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996)).  The mailings or wirings do not need to contain any misrepresentations provided they occurred for the purpose of executing the scheme. Id.

A review of Plaintiff's Verified Complaint indicates that Plaintiff alleges sufficient facts detailing the purported use of the mails and interstate wires with respect to each of the moving Defendants.  (RJR's Compl., ¶¶65-70, 90-99, 120-27, 130-33, 151-63, 239-431; RJR's Mem. In Opp'n, at 15 - 16 - Appco Defs.; 16-17 Dave's Distributing Defs.; and 17 - Alleged Co-Conspirators)  Plaintiff alleges the existence of two (2) schemes to defraud, the couponing and buy down schemes.

---

[14] The Court finds the facts of Sears Roebuck and Co. v. Emerson Elec. Co., 2003 U.S. Dist. LEXIS 332 (N.D.Ill.2003), cited by Appco, distinguishable in that the *only* connection Emerson had with alleged enterprise members was the predicate acts of racketeering activity - purported fraudulent scheme whereby two of the entities acted as "straw purchasers" of Sears' tooling and manufacturing equipment on Emerson's behalf.

[15] The elements of mail and wire fraud are the same. S.K. Everhart,Inc., 2003 WL 21788858, *5 n.2 (*citing* Johnson v. Collins Entm't Co., Inc., 199 F.3d 710, 722 (4th Cir.1999)).

Likewise, Plaintiff alleges sufficient facts indicating that the instances of mail and wire fraud were used in furtherance of the scheme. For example, Plaintiff alleges the mail and interstate wires were used:

1) to submit fraudulent sales data to RJR's third-party data collection service in Pennsylvania
2) to obtain the actual buy down payments from RJR
3) to cash the buy down checks
4) to exchange payments among the co-conspirators
5) to place orders for the bought-down cigarettes

(RJR's Compl., ¶¶156-63; 65-70, 90-99)

As for the legal sufficiency of Plaintiff's allegations of mail and wire fraud for purposes of establishing racketeering activity, Defendants contend Plaintiff's allegations are insufficient for the following reasons: 1) Defendants did not personally use the mails or wires; 2) Defendants did not make the misrepresentations relied upon by Plaintiff RJR; 3) use of a credit card does not amount to wire fraud unless there is an allegation that the credit card company was defrauded; 4) RJR was not deprived of money or property; and 5) no justifiable reliance. The undersigned briefly addresses each of Defendants' contentions in turn.

Although Plaintiff RJR did so allege[16], Plaintiff was not required to allege that Defendants *personally* engaged in mail and / or wire fraud. The mail and wire fraud statutes prohibit persons from "knowingly causing" the use of the mails and wires by others. 18 U.S.C. §§1341 and 1343; Pereira v. United States, 347 U.S. 1, 7-9 (1954); United States v. Coyle, 943 F.2d 424, 426 (4th Cir.1991)("it is not necessary to show that [defendants] actually mailed or transported anything

_____

[16] *See* RJR's Mem. In Opp'n, at 15-17 and RJR's Compl., ¶¶120, 121, 124, 130, 132 (Appco at the direction of Blackburn & Benedict); ¶¶132, 140 (RJ Marketing at the direction of Jason Carpenter); ¶¶156, 158-63 (Dave's Distributing at the direction of Dave Ritchie); and ¶¶180, 182, 184, 198, 203, 207 (Market Basket at the direction of Steve Hunt)).

themselves; it is sufficient if they caused it to be done"); <u>United States v. Godwin</u>, 272 F.3d 659, 667 (4th Cir.2001) ("a reasonable jury could find that [defendant] knew, or reasonably should have foreseen, that use of the mails would follow").

Further, the mailings and wires need not contain alleged misrepresentations and need not have been the actual misrepresentations relied upon by Plaintiff RJR. Mailings and wirings constitute violations of the mail and wire fraud statutes as long as they are in furtherance of a scheme to defraud. <u>S.K. Everhart, Inc.</u>, 2003 WL 21788858, *15 - 17 ("[i]t is sufficient for the mailing [or use of the wires] to be "incident to an essential part of the scheme"*"(citation omitted)*). In other words, even "innocent" mailings containing no false information may satisfy the mailing element as long as the communication is done in furtherance of the scheme. <u>Schmuck v. United States</u>, 489 U.S. 705, 714-15 (1989); <u>Morley v. Cohen</u>, 888 F.2d 1006, 1009-10 (4th Cir.1989).

Similarly, the use of a credit card can constitute a predicate act of wire fraud regardless of whether the credit card company itself is defrauded. The use of a credit card incident to a fraudulent scheme is sufficient. <u>United States v. Kirkland</u>, 330 F.Supp.2d 1151, 1163 (D. Ore.2004); <u>United States v. Rivera</u>, 295 F.3d 461 n.2 (5th Cir.2002)(explaining how use of a credit card to purchase goods involves the use of interstate wires).

Moreover, despite Defendant's suggestion to the contrary, Plaintiff RJR alleges that it has been deprived of money and / or property. (RJR's Compl., ¶314)

Defendants also challenge Plaintiff's justifiable reliance on the communications allegedly submitted in furtherance of the buy down and couponing schemes. For purposes of the Rule 12(b)(6) motions only, Plaintiff RJR has sufficiently alleged facts in support of its reasonable and justifiable

reliance on the false representations / communications allegedly made by Defendants and their co-conspirators.[17] (RJR's Compl., ¶¶7, 64-70, 95, 108, 121, 124, 130, 132, 159, 176-88, 198-208, 217, 228, 314) Chisolm., 95 F.3d at 337 (no analogous reliance requirement in a criminal RICO prosecution for mail / wire fraud); Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988).

## 2. The Contraband Cigarettes Trafficking Act, 18 U.S.C. §2342, *et seq.*

In addition to multiple alleged acts of federal mail and wire fraud, Plaintiff alleges violations of The Contraband Cigarettes Trafficking Act ("CCTA"), 18 U.S.C. §2342, *et seq.*, as additional predicate acts for purposes of its RICO claims. Specifically, Plaintiff alleges that the Appco Defendants, and others, violated 18 U.S.C. §2342(a). (RJR's Compl.,¶134) The CCTA makes it unlawful for "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes."[18] 18 U.S.C. §2342(a).

Plaintiff also alleges that all of the Defendants, including Appco, have engaged in activity that violates 18 U.S.C. §2342(b). (RJR's Compl., ¶¶134, 328, 337, 347, 358, 369) Section 2342(b) prohibits "any person who ships, sells, or distributes any quantity of cigarettes in excess of 60,000 in a single transaction" from knowingly making false statements or representations with respect to information required to be kept in the business records of the shipper, seller or distributor. 18 U.S.C. §2342(b). According to Plaintiff, the alleged fraudulent invoices, receipts, and batch picking

---

[17] It goes without saying that *all* of the Court's findings herein are limited accordingly. However, emphasis is particularly appropriate here given the questions of fact Appco highlighted in its memorandum. (Appco's Mem. In Supp., at 24.)

[18] Contraband cigarettes are defined as "a quantity in excess of 60,000 which bear no evidence of the payment of applicable State cigarette taxes in the State where such cigarettes are found." 18 U.S.C. §2341(2).

checklists containing false information regarding delivery of the cigarettes support its claim under §2342(b). (RJR's Compl., ¶¶121-27, 130-33, 180-87, 212)

### 3. RICO Predicates Versus An "Ordinary Commercial Dispute"

Defendants allege that the dispute between RJR and the Appco Defendants is "a contractual and ordinary commercial dispute that does not give rise to a claim under RICO." Thus, Defendants attempt to persuade the Court that application of RICO is simply not proper in this context. Defendants' narrow construction of RICO is contrary to the Supreme Court's interpretation of the statute. *See* H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 248-49 (1989)(rejecting the argument that §1962(c) required an organized crime nexus and clarifying that while "the perceived need to combat organized crime" was the impetus for enacting RICO, Congress drafted RICO broadly enough to encompass a wide range of criminal activity). As long as RJR is able to allege facts in support of the requisite elements of its RICO claims, Plaintiff is entitled to prosecute this case as a RICO action and pursue full advantage of the remedies provided under civil RICO. (*See* "IV,C")

### C. Plaintiff Alleges Facts In Support Of Defendants' Participation In A "Pattern Of Racketeering Activity"

RICO defines a "pattern of racketeering activity" as at least two (2) acts of racketeering activity occurring within a ten (10) year period. 18 U.S.C. §1961(5). The purpose of the pattern requirement is "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted." Menasco, 886 F.2d at 683; Eplus Tech., Inc. v.

Aboud, 313 F.3d 166, 181 (4th Cir.2002) (harsh RICO sanctions should not apply to garden-variety fraud schemes).

In addition to the statutory requirement of at least two (2) acts of racketeering activity, RJR must also demonstrate that the conduct at issue satisfies what is known as the "continuity plus relationship" test. In other words, RJR must allege facts tending to show 1) that the predicate acts are related; and 2) that they pose a threat of continued criminal activity. Northwestern Bell, 492 U.S. at 239; Sedima, 473 U.S. at 496, n.14 (RICO's legislative history reveals Congress' intent that a RICO pattern requires a combination of continuity plus relationship). The Fourth Circuit has held that "no mechanical test can determine the existence of a RICO pattern." HMK Corp. v. Walsey, 828 F.2d 1071, 1074 (4th Cir.1987) (quoting Int'l Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir.1987)). Rather, "[w]hat constitutes a RICO pattern is a matter of criminal dimension and degree." Id.

"Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Menasco, 886 F.2d at 683 (quoting Northwestern Bell, 109 S.Ct. at 2901; 18 U.S.C. §3575(e)).[19]

The continuity requirement refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Menasco, 886 F.2d at 683 (plaintiffs' allegations did not satisfy the continuity prong of RICO's pattern requirement where defendants' actions were directed towards a single fraudulent goal; limited purpose, one perpetrator,

---

[19] Defendants do not question the sufficiency of Plaintiff's allegations regarding relatedness of the predicate acts.

one set of victims, and transaction took place in approximately a year) (*quoting* Northwestern Bell, 109 S.Ct. at 2902.) Closed-ended continuity is established when a "series of related predicates extending over a substantial period of time" exists. G.E. Inv. Private Placement, 247 F.3d at 549 (*quoting* Northwestern Bell, 109 S.Ct. at 2902.) Open-ended continuity is established when the "related predicates themselves involve a distinct threat of long-term racketeering activity" or where the predicate acts "are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise." G.E. Inv. Private Placement, 247 F.3d at 549 (*quoting* Northwestern Bell, at 2902.) Therefore, RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." Id. (*quoting* Menasco, 886 F.2d at 684.)

According to the Fourth Circuit, the following factors are relevant to the continuity inquiry: 1 ) the number and variety of predicate acts alleged; 2) the length of time over which the predicate acts were committed; 3) the number of putative victims; 4) the presence of separate schemes; and 5) the potential for multiple distinct injuries. Parcoil Corp. v. Nowsco Well Serv., Ltd., 887 F.2d 502, 504 (4th Cir.1989). However, no one factor is determinative. HMK Corp., 828 F.2d at 1075 (length of time over which the predicate acts occurred and number of predicate acts are not necessarily determinative - peculiar context in which they occurred, as well as inherent characteristics of the situation must be considered).

As evidenced below, Plaintiff alleges sufficient facts in support of a pattern of racketeering activity to withstand Defendants' Rule 12(b)(6) motions.

## 1) Number & Variety Of Predicate Acts Alleged

Plaintiff alleges numerous instances of mail and wire fraud by different means. The Court acknowledges that the Fourth Circuit is reluctant to rely on predicate acts of mail and wire fraud to establish continuity. *See* GE Inv. Private Placement, 247 F.3d at 549 ("We are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice.") (*quoting* Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir.2000)). However, mail and wire fraud are not the only predicate acts alleged. (*See* "IV, B, 2") Plaintiff's allegations asserting Defendants' multiple violations of The Contraband Cigarettes Trafficking Act add both numbers and variety.

Appco Defendants contend that Plaintiff cannot establish a pattern (i.e., continuity) based upon the insufficient number of predicate acts alleged. In addition, Defendant Blackburn, asks the Court to look carefully at whether Plaintiff has alleged sufficient facts in support of a pattern with respect to Blackburn *individually*.[20] With respect to the Appco Defendants, Plaintiff alleges six (6) specific dates in which Appco, or its principals, were involved in fraudulent activity in furtherance of the cigarette "black market." (RJR's Compl., ¶¶121,124,127,130,132,167,242) As for Blackburn, Plaintiff alleges four (4) specific instances of mail and wire fraud in addition to other "similar orders" placed by Blackburn throughout 2003.[21] More specifically, during the period of time that Appco was on contract with RJR, it is alleged that Blackburn placed "special orders" for bought-

---

[20] Defendant cites United States v. Crysopt Corp. , 718 F.Supp. 375, 384 (D.Md.1991)("while the overall fraudulent scheme alleged in the instant case is grand in scale, the court must look to the predicate acts with which Crysopt itself is charged in determining whether a pattern of racketeering activity may be established against it").

[21] The dates alleged are June 19, 2002, September 11, 2002, March 7, 2003, and July 17, 2003.

down cigarettes over the phone on at least two (2) occasions. (RJR's Compl., ¶¶121-124) In addition, RJR alleges that on at least two (2) other occasions, Appco, acting through or at the direction of Blackburn, paid for "special orders" by check. (RJR's Compl., ¶¶130, 132) After Appco's contract with RJR was terminated, RJR alleges that Appco purchased bought down cigarettes via the "black market." (RJR's Compl., ¶¶167, 242) Although it is not expressly alleged, Appco's "black market" purchases were presumably conducted via the mail or wires.

The Dave's Distributing Defendants advance the same argument. Plaintiff alleges that on January 28, 2003, Dave's Distributing, through Dave Ritchie, faxed a price list advertising bought down cigarettes for sale. (RJR's Compl., ¶156) Plaintiff's theory is that Dave's Distributing faxed the price list in an attempt to recruit customers. (RJR's Compl., ¶156) Plaintiff further alleges that Dave's Distributing engaged the interstate wires via multiple credit card purchases of bought-down product (repetitive, contemporaneous transactions of five (5) cartons). (RJR's Compl., ¶¶158, 160, 161) In addition, RJR alleges that Dave's Distributing, through its employees, made "similar purchases" at nine (9) different stores from January 18, 2005 through June 8, 2005. (RJR's Compl., ¶162)

In S.K. Everhart, Inc., as few as three (3) predicate acts of mail or wire fraud were deemed sufficient for Plaintiff's action to survive a motion to dismiss. S.K. Everhart, Inc., 2003 WL 21788858, *5. Here, Plaintiff alleges more than three (3) predicates for each Defendant. More importantly, because each predicate act of mail or wire fraud specifically alleged with respect to any individual person or entity caused additional uses of the mail and wires in furtherance of the scheme, it would also be proper to consider the other predicate acts in evaluating facts alleged in support of continuity. (See "IV, B, 1")

**2) Length Of Time Over Which Predicate Acts Were Committed**

Whether Plaintiff has alleged facts in support of a closed-ended scheme or open-ended scheme turns upon whether Defendants' conduct evinces an isolated scheme with a finite goal or whether there is a possibility that the Defendants' alleged fraudulent conduct could continue indefinitely. In S.K. Everhart, Inc., then Chief Judge Tilley characterized a similar cigarette buy-down scheme as open-ended. In finding that the conduct at issue posed a threat of repetition, Judge Tilley explained:

> "RJR has alleged a scheme in which numerous wholesalers and retailers purchased, returned, and resold bought-down RJR cigarettes on numerous occasions over at least a four year period in order to obtain buy down discounts fraudulently. The conduct at issue was not directed toward the infliction of a single injury, rather, the scheme could have continued indefinitely . . . "

S.K. Everhart, Inc., 2003 WL 21788858, *5. The undersigned agrees with Judge Tilley's assessment, particularly given the allegations in this case that Defendants have continued to engage in the alleged fraudulent buy down and couponing schemes since the commencement of this action. (RJR's Compl., ¶¶243, 319-20) RJR also expressly alleges that members of the associations-in-fact "contemplated that the relationships would continue indefinitely" and likewise posits that commission of the predicate acts were part of the legal entity enterprises' regular business. (RJR's Compl., at ¶¶304, 310 ) At this stage in the proceedings, based solely upon Plaintiff's allegations, the Court considers the alleged scheme to be "open-ended."[22]

---

[22] Because the conduct at issue in this case has the potential to continue indefinitely, and may be considered open-ended, the GE Investment case cited by Appco is distinguishable. GE Inv. Private Placement Partners, II, 247 F.3d at 550-51 (17 months to 2 years is not enough in a *closed-ended* setting).

Similarly, the length of time that the fraudulent scheme is alleged to have occurred is consistent with finding continuity. According to the Appco Defendants, as the allegations within the Verified Complaint relate to Appco, the scheme only lasted approximately thirteen (13) months. Appco's definition of the relevant time period is a conservative one in that it defines the time period as limited to the specific instances of mail and wire fraud alleged and does not include Plaintiff's allegations that similar acts continued to occur. Plaintiff alleges that the conspiracy "was in full operation no later than 2002" and continued at least through the commencement of the case on September 23, 2005. (RJR's Compl., ¶2) Accepting Plaintiff's alleged facts as true, the relevant time period is much greater - more than two (2) years.

### 3) Number Of Putative Victims

Appco Defendants also challenge Plaintiff's § 1962(c) claim based upon the fact that RJR is the only victim of the alleged fraudulent conduct. RJR asserts that Defendants perpetrated the same scheme against Philip Morris and Lorillard and that Defendants' actions also resulted in harm to those entities. (RJR's Compl., ¶¶193, 196, 202, 206, 208) Accepting Plaintiff's allegations as true, the Court is not persuaded that RJR's competitors can be considered putative victims for purposes of this action.[23] Nonetheless, as both parties acknowledge, "there is no per se rule that a RICO claim does not lie when only one victim exists."[24] (Appco's Mem. In Supp. at 18; RJR's Resp. In Opp'n at 36 n. 86 (*quoting* Al-Abood, 217 F.3d at 238.)

---

[23] RJR asserts that competitors Philip Morris and Lorillard are also victims of Defendants' conduct. (RJR's Mem. In Opp'n, at 36; RJR's Compl., ¶¶193, 196, 202, 206, 208)

[24] Unlike American Bankers, cited by Defendant Blackburn, this action is not centered around a single business relationship. *See* Am. Bankers Ins. Co. v. First Union Nat'l Bank, 699 F.Supp. 1174, 1177 (E.D.N.C. 1988). Instead, there are multiple business relationships at different levels of the cigarette distribution chain.

**4) Presence Of Separate Schemes**

Plaintiff appears to concede that it has alleged a single scheme to defraud.[25] The existence of a single scheme is not fatal to Plaintiff's RICO actions. <u>Northwestern Bell</u>, 109 S.Ct. at 2899-2901. Defendants challenge continuity by claiming that the scheme centers around the contractual relationship between RJR and Appco. (Appco's Mem. In Supp., at 20; Blackburn's Mem. In Supp., at 7.) Pointing also to the fact that certain Defendants are only implicated by either the buy down scheme or the coupon scheme, Defendants argue that the alleged fraudulent scheme is too narrow. Plaintiff's allegations are to the contrary and allege that the fraudulent conduct permeated both the wholesale and retail aspects of the industry. (RJR's Mem. In Supp., at 36-37.) In terms of the breadth of Plaintiff's claims generally, "multiple predicates within a single scheme may constitute criminal activities which have long-term and widespread consequences – the very acts RICO was intended to prohibit." <u>Menasco</u>, 886 F.2d at 684 (*quoting* <u>Northwestern Bell</u>, 109 S.Ct. at 2899.)

**5) Potential For Multiple Distinct Injuries**

Given the number and variety of predicate acts alleged, Plaintiff has sufficiently alleged multiple, distinct injuries.

## V. Specific RICO Claims

### A. Federal RICO Claims, 18 U.S.C. §1962(c) / Pattern Of Racketeering Activity

In Counts 1 - IX, Plaintiff alleges Defendants have violated **18 U.S.C. §1962(c)**, which provides:

---

[25] The fraudulent scheme alleged by Plaintiff could be characterized as either a single, comprehensive scheme within the cigarette industry or dual, targeted schemes within the penumbra of a larger scheme to defraud.

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ."

18 U.S.C. §1962(c).

Defendants contend that Plaintiff's Section 1962(c) causes of action should be dismissed on multiple grounds.[26] As already discussed, *supra*, Plaintiff alleges sufficient facts in support of the RICO enterprises identified within the Verified Complaint as well as a pattern of racketeering activity. Defendants' other arguments are briefly addressed.

Defendants contend that RJR "has failed to plead the purported enterprise as separate from Defendants." Under Section 1962(c), the "enterprise" alleged must be separate from the defendant ("person"). Busby, 896 F.2d at 841; Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-62 (2001). For example, Plaintiff's Count V alleges a violation under §1962(c) against Defendants ("persons" / perpetrators) Carpenter, Clark, Appco, Blackburn, Benedict, Market Basket, Hunt, etc., premised on the RJ Marketing Enterprise. (RJR's Compl., ¶¶360-370) For each of its §1962(c) causes of action, Plaintiff has complied with this pleading requirement. (RJR's Mem. In Opp'n, at 45-46 n.124; RJR's Compl., ¶¶349-412)

Defendants next contend that Plaintiff has not alleged facts showing that Defendants "directed, operated or managed" the enterprises. In Reves v. Ernst & Young, the Supreme Court was tasked with interpreting the Section 1962(c) language: "conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). The Supreme Court held that liability was only proper where "one has participated in the

---

[26] There is no dispute regarding the effect on interstate commerce.

operation or management of the enterprise itself." <u>Reves</u>, 507 U.S., at 183. "[T]he word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." <u>Id.</u> *(emphasis in original)*.

Applying this standard, Plaintiff sufficiently alleges Defendants' "operation or management" of the respective enterprises. By way of example, Plaintiff's alleges that Blackburn, President of Convenience Store Operations for Appco, was one of the leaders and principal actors on behalf of Appco for purposes of executing the fraud, and had some part in the direction of the other enterprises. This is sufficient to survive Defendant Blackburn's motion to dismiss. (RJR's Compl., ¶¶29, 121-124, 127,130, 132, 227) The same analysis applies to the other movants.

### B. Federal RICO Claims, 18 U.S.C. §1962(a) / Receipt Of Income From Racketeering Activity & N.C. Gen. Stat. §75D-4(a)(1)

Plaintiff also alleges violations of 18 U.S.C. §1962(a) in Counts X and XV. In order to succeed on its Section 1962(a) cause of action, Plaintiff RJR must show "(a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise." <u>Busby</u>, 896 F.2d at 837; <u>Sadighi v. Daghighfekr</u>, 36 F.Supp. 2d 279, 289 n.9 (D.S.C. 1999) (plaintiff's injuries must be proximately caused by either the underlying predicate acts or the investment and use of the income derived from the same). Again, the Court has already analyzed the RICO basics, "enterprise" and "pattern of racketeering activity." The fourth element - requiring that the enterprise was engaged in or affecting interstate commerce - is not at issue.

Citing no authority, Dave's Distributing contends that civil RICO liability pursuant to Section 1964(c) does not extend to Section 1962(a). (DD's Mem. In Supp., at 26.) Title 18, United States

Code, Section 1964(c) provides for a private right of action and statutory civil remedies for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." Thus, Section 1964(c) does not distinguish between the different provisions or subsections of Section 1962. 18 U.S.C. 1964(c); Busby, 896 F.2d 833 (applying §1962(a) to a civil case); S.K. Everhart, Inc., 2003 WL 21788858, *19.

The Court likewise rejects the Appco's contention that the alleged enterprises *must* be the "victims" of the racketeering activity for purposes of §1962(a).[27] The Fourth Circuit noted in Busby v. Crown Supply, Inc., the different roles that a corporation enterprise may play in any given RICO case. The appellate court explained that while the corporate enterprise was alleged to be the perpetrator in that case, the corporation is often the "passive" victim of the racketeering activity. Busby, 896 F.2d at 838 n. 5 (*citing* D & S Auto Parts, Inc. v. Schwartz, 838 F.2d 964, 947 (7th Cir. 1988)). The Court explained further that when the corporation-enterprise "perpetuates illegal conduct, [it] can be sanctioned under §1962(a), which, unlike subsection (c), contains no language indicating that the enterprise itself cannot be a liable "person."" Id.

Dave's Distributing contends that any harm Plaintiff may have sustained as a result of §1962(a) violations were not proximately caused by Dave's Distributing. The gist of Defendant's argument is that Dave's Distributing was too far removed from Plaintiff RJR's relationships with

---

[27] Appco extracts language from National Organization For Women, Inc. v. Scheidler in support of its argument. Nat'l Org. For Women, Inc. v. Scheidler, 510 U.S. 249 (1994). In Schiedler, the Supreme Court elaborates in *dicta* on how roles of the RICO enterprise are different for purposes of Sections 1962(a) and (b) than with Section 1962(c). Nat'l Org. For Women, 510 U.S. at 258-59, n.5. However, the legal issue presented by the National Organization For Women case was whether RICO requires proof that either the racketeering enterprise or predicate acts of racketeering be motivated by economic purpose. Id., at 252. A careful reading of the Supreme Court's analysis does not support Appco's theory.

its contracted retailers and wholesalers to be held responsible. However, "[t]he pertinent inquiry in determining the existence of proximate . . . cause is whether the conduct has been so significant and important a cause that the defendant should be held responsible." Chisolm, 95 F.3d at 336 (*internal citations omitted*). Plaintiff alleges that Dave's Distributing's predicate acts of mail and wire fraud furthered the fraudulent buy down scheme and was, therefore, a substantial factor in causing RJR's injuries. (RJR's Compl., ¶¶153-63, 271-79, 314-18) Plaintiff adequately pleads causation with respect to Dave's Distributing.

In sum, Plaintiff has alleged sufficient facts in support of its §1962(a) claim. (RJR's Compl., ¶¶1-412, 413-418) Plaintiff's Verified Complaint alleges that Defendants received income from both of the fraudulent schemes. (RJR's Compl., ¶417) Plaintiff also alleges that, upon information and belief, the income received as a result of the pattern of racketeering activity was used or invested by the enterprises, "to perpetuate their corporate existence, to expand their operations, and to facilitate their continued scheme to defraud. . . " (RJR's Compl., ¶417)

### C. Federal RICO Conspiracy, 18 U.S.C. §1962(d) & N.C. Gen. Stat. 75D-4(a)(3)

In Counts XI and XVI, Plaintiff alleges Defendants engaged in a conspiracy to violate federal racketeering laws. "Section 1962(d) prohibits a conspiracy to violate any of the provisions of subsections (a) . . . or (c)." 18 U.S.C. §1962(d); S.K. Everhart, Inc., 2003 WL 21788858, *7. In order to establish a violation of §1962(d), Plaintiff must prove that Defendant "intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [Defendant] adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997).

A RICO conspiracy may be proven by showing "that each defendant agreed that another coconspirator would commit two or more acts of racketeering . . . RICO conspiracy does not require that each coconspirator personally agree to commit two or more acts of racketeering." S. K. Everhart, Inc., 2003 WL 21788858, *7 (*quoting* United States v. Pryba, 900 F.2d 748 (4th Cir.1990)). "[P]laintiff's allegations are sufficient if they support the conclusion that the defendants "agreed that another coconspirator would commit two or more acts of racketeering." Id.

Defendants challenge Plaintiff's federal RICO conspiracy claim on essentially the same grounds, namely, that Plaintiff fails to allege facts to support the underlying substantive RICO offenses - lack of pattern of racketeering activity (no continuity) and absence of facts in support of a RICO enterprise. However, because Defendants' challenges to the substantive offenses fail, these arguments provide no basis for dismissing the conspiracy claim at this stage in the litigation.

Defendants further contend that Plaintiff does not allege specific facts in support of the existence of any agreement by certain Defendants to violate the RICO statute. The undersigned disagrees. Plaintiff alleges ample specific facts in support of an agreement or conspiracy between the Defendants. (RJR's Compl., ¶421) Plaintiff also alleges ample facts from which the existence of an agreement could reasonably be inferred.

### D. Plaintiff's North Carolina RICO Claims May Proceed / N.C. Gen. Stat. §75D-8

In their Answers, Defendants RJM, Carpenter, Market Basket, and Hunt contend that RJR did not comply with the statutory requirement that the Attorney General be notified of a private civil action. North Carolina General Statute, Section 75D-8(c) provides in part:

> "Any person filing a private action under this subsection must concurrently notify the Attorney General in writing of the commencement of the action."

N.C. Gᴇɴ. Sᴛᴀᴛ. §75D-8(c). Plaintiff states in its filing that it has, in fact, notified the North Carolina Attorney General of the commencement of this action. (RJR's Mem. In Opp'n, at 62 n.169)

## VI. Order

In conclusion, Plaintiff RJR has alleged sufficient facts in support of each of its federal and state law RICO claims. While Defendants are entitled to disagree with Plaintiff's version of the facts, many aspects of Defendants' motions to dismiss are more appropriately addressed at summary judgment or at trial.

**IT IS HEREBY ORDERED THAT:**

1) Defendants' Motions pursuant to Rules 12(b)(6) and 12(c) are hereby **DENIED**;

2) Defendants' Motions requesting that the Court decline to retain supplemental jurisdiction over Plaintiff's state law claims are **DENIED**;

3) The **STAY** on discovery imposed pursuant to the Court's February 8, 2006 Order (Document #180) is **LIFTED**, effective immediately; and

4) The parties shall resubmit their joint proposals regarding case management and pretrial scheduling **on or before Friday, September 1, 2006**.

Signed: August 21, 2006

Richard L. Voorhees
United States District Judge

---

[28] Although not discussed herein, this Memorandum & Order also denies Dave's Distributing's and Dave Ritchie's Rule 12(b)(6) motion with respect to Plaintiff's state law claims.

29